**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

TIMOTHY BRONZINO, )
)
Plaintiff, )
)
v. ) Case No. 09 C 1048
)
OFFICER DAVID SHELDON, OFFICER BRIAN SHIELDS, and the CITY OF AURORA, )
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On February 18, 2009, Plaintiff Timothy Bronzino filed a ten-count Complaint alleging violations of his constitutional rights, along with state law claims, against Defendants City of Aurora and Aurora Police Officers David Sheldon and Brian Shields. *See* 28 U.S.C. §§ 1331, 1367(a), 42 U.S.C. § 1983. Before the Court is Defendants' motion for partial summary judgment as to Bronzino's Fourth Amendment false arrest claim (Count II) and the corresponding portions of Bronzino's Section 1983 conspiracy claim (Count VII), as well as Bronzino's state law claims of false arrest (Count III) and malicious prosecution (Count V). *See* Fed.R.Civ.P. 56(a). For the following reasons, the Court denies Defendants' motion.

**BACKGROUND**

Plaintiff Timothy Bronzino ("Bronzino") resides at 3047 Derby Court, Aurora, Illinois, and is a hairdresser employed at Salon Bronzino, which is owned by his wife, Stacy Bronzino ("Stacy"). (R. 100, Defs.' Rule 56.1 Stmt. Facts. ¶ 1.) The City of Aurora employs both Defendant Officers Brian Shields and David Sheldon as a police officers. (*Id*. ¶¶ 2, 3.) The City

of Aurora is a municipal corporation incorporated under the laws of the State of Illinois. (*Id*. ¶ 4.)

Prior to the incident that is the basis of this lawsuit, Bronzino suffered – and continues to suffer – from bipolar disorder, cluster headaches, anxiety disorder, and depression. (*Id*. ¶ 5.) More specifically, in December 2007, Bronzino's primary care physician diagnosed him as having anxiety disorder, insomnia, and depression. (*Id*.) Around that same time, Bronzino was also diagnosed with bipolar disorder Type 1 and his physician placed him on several medications to control his behavioral and medical conditions. (*Id*. ¶ 6.)

On the morning of June 18, 2008, Bronzino woke up feeling tired and was suffering from a headache. (*Id*. ¶ 8.) He took his medications at or about 9:00 a.m., but he did not feel well enough to go to work that day. (*Id*.) Instead, he watched some television and went back to sleep. (*Id*.) When his wife Stacy left for work around 1:00 p.m., Bronzino was sleeping on the couch. (*Id*. ¶ 9.) Bronzino awoke at approximately 3:00 p.m. and still felt nauseous and tired. (*Id*.) Bronzino believes that he then took his medication a second time. (*Id*.) When Stacy came home around 5:00 p.m., Bronzino was sitting on the couch watching television and after Stacy asked him how he was feeling, he informed her that he had a migraine, was nauseous, and felt dizzy. (*Id.* ¶ 10.) At that time, Stacy observed that Bronzino's face was red and flushed. (*Id*. ¶ 11; R. 112, Pl.'s Stmt. Facts ¶ 2.) Stacy then asked him if he had taken his medications a second time and he told her that he had double-dosed. (Defs.' Stmt. Facts ¶ 11; Pl.'s Stmt. Facts ¶ 4.) Bronzino was only supposed to take his medications once a day, and thus Stacy called his primary care physician and spoke with the doctor's service between 5:00 p.m. and 6:00 p.m. on June 18, 2008. (*Id.* ¶ 12.)

Stacy then told her daughter to call Bronzino's mother, Lucille Wellman, to ask her to call for an ambulance. (Defs.' Stmt. Facts ¶¶ 14, 15.) The daughter then called Wellman and asked her to call 911, telling her grandmother that something happened with Bronzino's medicine. (*Id*. ¶¶ 16, 17.) Stacy testified that she overheard her daughter say to Wellman: "Dad took too much medicine. We have to take him to the hospital. My mom wants you to meet us there." (*Id*. ¶ 18.) Wellman eventually called 911 and requested a police squad car to go to Bronzino's house stating that Bronzino was "going crazy." (*Id*. ¶ 23.) Meanwhile, Bronzino went outside around 8 p.m. to smoke a cigarette and Stacy went outside to talk to him. (Pl.'s Stmt. Facts ¶ 8; Defs.' Stmt. Facts ¶ 20.)

Officers Sheldon and Shields were dispatched to Bronzino's home at or around 8:15 p.m. (Defs.' Stmt. Facts ¶ 25.) The dispatch instructed them to investigate a domestic violence situation at 3047 Derby Court. (*Id*.; Pl.'s Stmt. Facts ¶ 10.) There is evidence in the record that dispatch also advised Defendant Officers that there was a possibility of a drug overdose. (Pl.'s Stmt. Facts ¶ 11.) When Defendant Officers arrived at Bronzino's home, they parked their squad cars across the cul-de-sac and observed a woman at the front door of the home and that a man was outside smoking a cigarette. (Defs.' Stmt. Facts ¶ 27.) The parties dispute whether Bronzino then told the Defendant Officers to "Get off my property. I didn't call you. Get off my property." (*Id*.) The parties also dispute whether Officer Shields said: "We're here to investigate a domestic. We have to do our job." (*Id*. ¶ 28.) The parties do not dispute that Officer Sheldon approached Stacy and asked her if everything was okay to which Stacy responded yes. (*Id*. ¶ 30; Pl.'s Stmt. Facts ¶ 16.)

Meanwhile, Officer Sheldon observed a pitcher and towels on the floor, as well as liquid

on the wall, through the open front door. (Defs.' Stmt. Facts ¶ 31.) Officer Sheldon then asked Stacy for the second time if she was okay to which she answered yes. (*Id.* ¶ 32.) Stacy testified that she assured Officer Sheldon that everything was fine, but that Bronzino had taken an overdose of his prescription medications and that they had called 911. (Pl.'s Stmt. Facts ¶ 17.) Defendant Officers dispute whether Stacy told Officer Sheldon this information.

Officer Shields then approached Bronzino, but the parties dispute whether Bronzino was agitated and angry and whether Bronzino stated: "What the fuck are you doing here?" (Defs.' Stmt. Facts ¶ 33.) In fact, the parties dispute the vast majority of Bronzino's interactions with Officers Shields and Sheldon. The parties do not dispute, however, that after Officer Shields talked to Bronzino, Bronzino began walking toward his home where Officer Sheldon was talking to Stacy. (Defs.' Stmt. Facts ¶ 37.) Officer Shields testified at his deposition that he told Bronzino to stop or he would arrest him for obstructing his investigation into the alleged domestic dispute. (*Id.* ¶ 38.) Bronzino and Stacy testified otherwise.

Defendant Officers maintain that Bronzino then escalated the situation by clenching his right fist and yelling. (*Id.* ¶¶ 40, 41.) Bronzino and Stacy deny this happened. (Pl.'s Stmt. Facts ¶¶ 21-23.) Officer Shields then grabbed Bronzino's right arm and Officer Shields grabbed Bronzino's left arm, after which they allege that they ordered him to the ground. (Defs.' Stmt. Facts ¶ 42.) Defendant Officers maintain that after Bronzino refused to go to the ground, they had to place him there. (*Id.* ¶ 43.) Stacy and Bronzino, on the other hand, testified that Officer Shields threw Bronzino to the ground. (Pl.'s Stmt. Facts ¶ 24.) The parties do not dispute that thereafter Defendant Officers lifted Bronzino and took him across the cul-de-sac to the patrol cars parked there. (*Id*. ¶¶ 26, 27.)

In his Complaint, Bronzino alleges a Fourth Amendment excessive force claim (Count I); a Fourth Amendment false arrest claim (Count II); a state law false arrest claim (Count III); a state law battery claim (Count IV); a state law malicious prosecution claim (Count V); a Section 1983 conspiracy claim based on his Fourth Amendment excessive force and false arrest claims (Count VII);[1] a state law conspiracy claim (Count VIII); an indemnification claim against the City of Aurora (Count IX); and a respondeat superior claim against the City of Aurora. (Count X).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

[1] On October 19, 2010, the Court granted the parties' agreed upon motion to dismiss Count VI of the Complaint – Bronzino's Fourteenth Amendment deliberate indifference to medical needs claim – with prejudice. (R. 58.)

## ANALYSIS

### I. Counts II and VII – Federal False Arrest and Conspiracy Claims

Defendant Officers argue that they are entitled to qualified immunity as to Bronzino's false arrest claim as alleged in Count II and the corresponding portions of Bronzino's Section 1983 conspiracy claim alleged in Count VII. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "In actions under 42 U.S.C. § 1983 alleging violations of constitutional rights, qualified immunity shields an official from liability for civil damages, provided that the illegality of the official's conduct was not clearly established at the time he acted." *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). In determining whether Defendant Officers are entitled to qualified immunity, the Court must decide if: (1) the facts, taken in a light most favorable to Bronzino, make out a violation of a constitutional right; and (2) whether the right was clearly established at the time of Defendant Officers' alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011).

Under the first *Saucier* prong, Defendant Officers argue there are no genuine disputes as to any material fact that a reasonable police officer could have concluded that there was probable cause to arrest Bronzino for resisting or obstructing a police officer under 720 ILCS 5/31-1(a). "The existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim." *Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011). Probable cause exists if "at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing,

in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Gonzalez v. City of Elgin,* 578 F.3d 526, 537 (7th Cir. 2009). "In evaluating probable cause, [courts] look only to the information known to the officer at the time of arrest, and []view the circumstances of the arrest from the perspective of a reasonable person in the position of the officer." *Mucha v. Village of Oak Brook,* 650 F.3d 1053, 1057 (7th Cir. 2011). In short, Defendant Officers are entitled to qualified immunity only if they had probable cause to arrest Bronzino or if a reasonable officer in their position could have mistakenly believed that probable cause existed. *See Jones v. Clark*, 630 F.3d 677, 684 (7th Cir. 2011); *see also Humphrey v. Staszak,* 148 F.3d 719, 725 (7th Cir. 1998) ("Courts have referred to the second inquiry as asking whether the officer had 'arguable' probable cause."). Meanwhile, the Illinois statute for resisting or obstructing a police officer states: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a). "In Illinois, the crime of resisting a peace officer involves the commission of 'a physical act of resistance or obstruction ... that impedes, hinders, interrupts, prevents, or delays the performance of the officer's duties, such as by going limp or forcefully resisting arrest.'" *Brooks v. City of Aurora, Ill.,* 653 F.3d 478, 484 (7th Cir. 2011) (citation omitted).

The facts surrounding Bronzino's arrest are hotly disputed. In fact, Stacy's and Bronzino's version of the events surrounding Bronzino's arrest differ significantly from Defendant Officers' version. Also, at least two of Bronzino's neighbors witnessed Bronzino's interactions with the Defendant Officers and these neighbors offer additional testimony about the

arrest. As the Seventh Circuit repeatedly cautions, "[i]t is not for courts at summary judgment to weigh evidence or determine the credibility of [a witness's] testimony; we leave those tasks to factfinders." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011) (citation omitted). Indeed, at this procedural posture the Court must view the facts and all reasonable inferences in Bronzino's favor to determine whether Defendant Officers had probable cause to arrest him or if a reasonable officer in Defendant Officers' position could mistakenly have believed that probable cause existed. *See Gonzalez*, 578 F.3d at 538; *Payne v. Pauley,* 337 F.3d 767, 776-77 (7th Cir. 2003).

Construing the facts and all reasonable inferences in Bronzino's favor, he has presented sufficient evidence creating genuine factual disputes as to whether Defendant Officers had probable cause to arrest him – or whether a reasonable officer under the same circumstances could have mistakenly believed that probable cause existed under the "arguable probable cause" standard. *See Williams v. Jaglowski,* 269 F.3d 778, 781 (7th Cir. 2001); *Humphrey,* 148 F.3d at 725. Looking to what the Defendant Officers knew at the time of the arrest, *see Mucha*, 650 F.3d at 1057, evidence in the record shows that Officers Sheldon and Shields were dispatched to Bronzino's home at or around 8:15 p.m on June 18, 2008. Dispatch instructed them to investigate a domestic violence situation at 3047 Derby Court. There is also evidence in the record that dispatch advised Defendant Officers that there was a possibility of a drug overdose. When Defendant Officers arrived near Bronzino's home, they observed a woman at the front door and a man outside smoking a cigarette. Officer Sheldon then approached the woman, Bronzino's wife Stacy, and asked her if everything was okay to which Stacy responded yes. After Officer Sheldon observed a broken pitcher inside the Bronzino home, he again asked Stacy

if she was okay and Stacy assured Officer Sheldon that everything was fine, informing him that Bronzino had taken an overdose of his prescription medications and that they had called 911. Bronzino and Stacy also testified that Defendant Officers did not warn Bronzino that they would arrest him or that he was under arrest. Further, Bronzino and Stacy deny that Bronzino raised his voice while speaking to Officer Shields. Meanwhile, Stacy and Bronzino deny that Bronzino was agitated or angry, as Defendant Officers maintain, or that Bronzino raised his fist. Further, Stacy and Bronzino testified that Officer Shields threw Bronzino to the ground, after which Defendant Officers lifted Bronzino and took him across the cul-de-sac.

Viewing the facts in Bronzino's favor, there is an issue of fact as to whether Bronzino physically resisted or obstructed Defendant Officers' performance. Under Illinois law, conduct constituting the resisting or obstructing of a police officer must be physical, not merely verbal. *See Brooks*, 653 F.3d at 484; *Payne*, 337 F.3d at 776. Thus, any statements, whether profanity-laden or not, directed at Defendant Officers cannot constitute resisting or obstructing a police officer. *See Gonzalez*, 578 F.3d at 538 ("the First Amendment protects even profanity-laden speech directed at police officers.") (citation omitted). In addition, Defendant Officers' argument that they had probable cause to arrest Bronzino simply because he turned and walked toward his wife Stacy while Officer Shields was conducting his domestic violence investigation is simply unavailing without evidence that this conduct impeded, hindered, interrupted, prevented, or delayed Defendant Officers' performance. *See Brooks,* 653 F.3d at 484. As discussed, the Court must construe the facts and all reasonable inferences in Bronzino's favor – not in Defendant Officers' favor. *See id.* at 483.

Because Bronzino has presented sufficient evidence creating a genuine issue of material

fact that Defendant Officers violated his constitutional right to be free from arrest without probable cause, he has established the first prong of the *Saucier* qualified immunity test. *See Stainback v. Dixon*, 569 F.3d 767, 770 (7th Cir. 2009). Moreover, Bronzino's right to be free from arrest without probable cause was clearly established at the time of his arrest under the second *Saucier* prong. *See Gonzalez,* 578 F.3d at 541; *see also Jones v. Clark* 630 F.3d 677, 682 (7th Cir. 2011). In sum, factual disputes prevent resolution of Defendant Officers' qualified immunity defense. *See Jones,* 630 F.3d at 680. The Court therefore denies Defendants' motion for partial summary judgment as to Bronzino's false arrest claim as alleged in Count II and the corresponding portions of Bronzino's Section 1983 conspiracy claim as alleged in Count VII.[2]

## II. Counts III and V – State Law Arrest and Malicious Prosecution Claims

Next, Defendant Officers maintain that because they had probable cause to arrest Bronzino, his common law false arrest and malicious prosecution claims must fail. In order to establish a malicious prosecution or false arrest claim under Illinois law, a plaintiff must show the absence of probable cause. *See Gauger v. Hendle,* ___ Ill.App.3d ___, 352 Ill.Dec. 447, 467, 954 N.E.2d. 307, 327 (Ill. 2011); *Hurlbert v. Charles*, 238 Ill.2d 248, 255, 345 Ill.Dec. 68, 938 N.E.2d 507 (Ill. 2010). As discussed above, there are genuine disputes as to the material fact of whether Defendant Officers had probable cause to arrest Bronzino. Accordingly, the Court denies Defendants' motion for partial summary judgment as to Counts III and V of the Complaint.

---

[2] Defendants' argument in their Reply Brief that Bronzino did not engage in any qualified immunity analysis is without merit. (*See* R. 110, Pl.'s Resp. Brief, at 3-9.)

## CONCLUSION

For the these reasons, the Court denies Defendants' motion for partial summary judgment. Because the Court addressed Defendants' objections to Plaintiff's Local Rule 56.1(b)(3)(B) Responses in the context of each fact, the Court denies Defendants' motion to strike – that Defendants did not file as a separate motion or properly notice before the Court in violation of Northern District of Illinois Local Rule 5.3(b).

**Date:** January 5, 2012

**ENTERED**

______________________________________
**AMY J. ST. EVE**
**United States District Court Judge**