# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 1048 | **DATE** | 8/2/2012 |
| **CASE TITLE** | Bronzino vs. Sheldon et al | | |

**DOCKET ENTRY TEXT**

The Court, in its discretion, grants Plaintiff's motion in limine #3 [133] and denies Defendants' motion in limine #6 [140] without prejudice.

■ [ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

On February 18, 2009, Plaintiff Timothy Bronzino ("Bronzino") filed a ten-count Complaint alleging violations of his constitutional rights, along with state law claims, against Defendants City of Aurora and Aurora Police Officers David Sheldon and Brian Shields. *See* 28 U.S.C. §§ 1331, 1367(a). On January 5, 2012, the Court denied Defendants' motion for partial summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a). Thereafter, on March 21, 2012, the Court set a trial date of September 4, 2012. Before the Court are the Plaintiff's motion in limine #3 and Defendants' motion in limine #6. For the following reasons, the Court, in its discretion, grants Plaintiff's motion in limine #3 and denies Defendants' motion in limine #6 without prejudice.

## LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In limine rulings avoid delay and allow the parties the opportunity to prepare themselves and witnesses for the introduction or exclusion of the applicable evidence. *See Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999); *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). Trial courts have broad discretion in ruling on evidentiary issues before and during trial. *See Christmas, v. City of Chicago,* 682 F.3d 632, 640 (7th Cir. 2012). Regardless of the Court's initial ruling on a motion in limine, the Court may alter its discretionary ruling during trial. *See Luce,* 469 U.S. at 41-42; *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006). The Court will only grant a motion in limine when the evidence is clearly inadmissable for any purpose. *See Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Betts v. City of Chicago, Ill.*, 784 F.Supp.2d 1020, 1023 (N.D. Ill. 2011).

| | Courtroom Deputy Initials: | KF |
|---|---|---|

## BACKGROUND

Prior to the incident that is the basis of this lawsuit, Bronzino suffered – and continues to suffer – from bipolar disorder, cluster headaches, anxiety disorder, and depression. Bronzino takes several different medications to control his behavioral and medical conditions. On the morning of June 18, 2008, Bronzino woke up feeling tired and was suffering from a headache. He took his medications at or about 9:00 a.m., but he did not feel well enough to go to work that day. Instead, he watched some television and went back to sleep. When his wife Stacy left for work around 1:00 p.m., Bronzino was sleeping on the couch. Bronzino awoke at approximately 3:00 p.m. and still felt nauseous and tired. At that time, Bronzino believes that he took his medication for a second time. When Stacy came home around 5:00 p.m., Bronzino was sitting on the couch watching television and after Stacy asked him how he was feeling, he informed her that he had a migraine, was nauseous, and felt dizzy. Stacy then observed that Bronzino's face was red and flushed and asked Bronzino if he had taken his medications a second time. Bronzino then told her that he had double-dosed. Bronzino was only supposed to take his medications once a day, and thus Stacy called his primary care physician and spoke with the doctor's service between 5:00 p.m. and 6:00 p.m.

Stacy then told her daughter, Alessandra Bronzino, to call Bronzino's mother, Lucille Wellman, to ask her to call an ambulance. Alessandra then called Wellman and asked her to call 911, telling her grandmother that something had happened with Bronzino's medicine. Wellma called 911 and requested a police squad car to go to Bronzino's house stating that Bronzino was nuts, berserk, and crazy. In the meantime, Bronzino went outside around 8 p.m. to smoke a cigarette and Stacy went outside to talk to him.

Officers Sheldon and Shields were dispatched to Bronzino's home at or around 8:15 p.m. Dispatch instructed them to investigate a domestic violence situation at the Bronzino's home. When Defendant Officers arrived at Bronzino's home, they parked their squad cars across the cul-de-sac and observed Stacy at the front door of the home and Bronzino outside smoking a cigarette. The parties dispute whether Bronzino then told the Defendant Officers to "Get off my property. I didn't call you. Get off my property." The parties also dispute whether Officer Shields said: "We're here to investigate a domestic. We have to do our job." The parties do not dispute, however, that Officer Sheldon approached Stacy and asked her if everything was okay to which Stacy responded yes. Meanwhile, through the open front door, Officer Sheldon observed a pitcher and towels on the floor, as well as liquid on the wall. Officer Sheldon then asked Stacy for the second time if she was okay to which she answered yes. Stacy testified that she assured Officer Sheldon that everything was fine, but that Bronzino had taken an overdose of his prescription medications and that they had called 911. Defendant Officers dispute whether Stacy told Officer Sheldon this information.

Officer Shields then approached Bronzino, but the parties dispute whether Bronzino was agitated and angry and whether Bronzino stated: "What the fuck are you doing here?" The parties do not dispute that after Officer Shields talked to Bronzino, Bronzino began walking toward his home where Officer Sheldon was talking to Stacy. Officer Shields testified at his deposition that he told Bronzino to stop or he would arrest him for obstructing his investigation into the alleged domestic dispute. Bronzino and Stacy testified otherwise. Defendant Officers maintain that Bronzino then escalated the situation by clenching his right fist and yelling. Bronzino and Stacy deny this happened. Officer Shields then grabbed Bronzino's right arm and Officer Shields grabbed Bronzino's left arm, after which they allege that they ordered him to the ground. Defendant Officers maintain that after Bronzino refused to go to the ground, they had to place him there. Stacy and Bronzino, on the other hand, testified that Officer Shields threw Bronzino to the ground. Thereafter, Defendant Officers lifted Bronzino and took him across the cul-de-sac to the patrol cars parked there.

## ANALYSIS

In Plaintiff's motion in limine #3, Bronzino seeks to bar evidence of his unrelated medical and psychological history, conditions, and treatment. More specifically, Bronzino maintains that Defendants have listed certain medical personnel to be called as witnesses, along with related medical records to be admitted into evidence. These records contain documentation of treatment for Bronzino's various psychiatric and physical diseases, including his bipolar disorder, alcoholism, and hearing loss.

In Defendants' motion in limine #6, Defendants seek to cross-examine Bronzino as to matters that give rise to Bronzino's emotional distress damages. In particular, Defendants maintain that because Bronzino is seeking damages based on his emotional distress, they "are entitled to fully delve into other matters giving rise to Plaintiff's emotional distress," including, "Plaintiff's bipolar disorder, his drinking problems, his hearing loss, his migraine headaches, the effect that his hearing loss has on his ability to perform his job, financial problems and the like." (R. 140, Defs.' MIL #6, at 2.)

In response to Defendants' motion in limine #6, Bronzino asserts that he is not claiming psychological "symptoms or conditions" resulting from the June 18, 2008 as part of his compensatory damages, but instead, is limiting his damages to the negative emotions he experienced as a result of Defendants' alleged misconduct, such as pain and suffering, feelings of fear, anxiety, or humiliation that Defendant Officers' misconduct induced. In other words, Bronzino is asserting "garden variety" emotional distress damages limiting his damages to the negative emotions he experienced. *See Santelli v. Electro-Motive,* 188 F.R.D. 306, 309 (N.D. Ill. 1999). Under these circumstances, the parties, are "barred from introducing evidence of any resulting symptoms or conditions that [plaintiff] might have suffered." *Id.* In fact, Bronzino maintains that he advised defense counsel that he was limiting his damages as such.

The Court agrees that Defendants' request to fully delve into "other matters" giving rise to Bronzino's emotional distress is too broad and also unfairly prejudicial. *See* Fed.R.Evid. 403; *Whitehead v. Bond,* 680 F.3d 919, 930 (7th Cir. 2012) ("Evidence is unfairly prejudicial in the context of Rule 403 if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented.") (citation omitted). Bronzino's hearing loss – which was diagnosed a year and a half after the June 18, 2008 incident and for which Plaintiff does not seek damages – for example, has absolutely nothing to do with the physical and mental pain and suffering that Bronzino experienced as a direct result of Defendant Officers' conduct. *See* Seventh Circuit Pattern Jury Instruction 7.23, Damages: Compensatory. Thus, assuming that Bronzino limits his emotional distress damages to "garden variety" damages, Plaintiff's motion in limine #3 is granted and Defendants' motion in limine #6 is denied without prejudice. As Judge Shadur concluded in a similar lawsuit against the City of Aurora in which Defendants made the same arguments concerning emotional distress damages, "[t]he issue may have to be revisited at trial, but if plaintiff's counsel and their client cabin such testimony carefully, the exclusionary ruling will remain in effect." *See Kopek v. City of Aurora,* No. 10 C 5593, 2012 WL 1570410, at *2 (N.D. Ill. May 3, 2012). If Defendants believe that Plaintiff opens to door to the cross-examination of this issues at trial, Defendants must first raise the issue with the Court outside the presence of the jury.