**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY BRONZINO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 1048 |
| | ) | |
| OFFICER DAVID SHELDON, OFFICER | ) | |
| BRIAN SHIELDS, and the CITY OF | ) | |
| AURORA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On September 10, 2012, a jury returned a verdict in favor of Plaintiff Timothy Bronzino against Defendant Brian Shields as to Plaintiff's Fourth Amendment Excessive Force claim. The jury, however, returned a verdict in favor Defendants on the remainder of Plaintiff's claims, which included failure to intervene, false arrest, and malicious prosecution claims, as well as an excessive force claim against Defendant David Sheldon. The jury awarded Plaintiff $9,000.00 in compensatory damages for Defendant Shields' excessive force violation. Before the Court is Plaintiff's fee petition pursuant to 42 U.S.C. § 1988(b). The Court, in its discretion, awards Plaintiff's counsel $66,860.63. in attorney's fees.

## LEGAL STANDARD

The prevailing party in a Section 1983 action may recover reasonable attorney's fees. *See* 42 U.S.C. § 1988; *Johnson v. GDF, Inc.,* 668 F.3d 927, 929 (7th Cir. 2012). The United States Supreme Court has "made clear that plaintiffs may receive fees under § 1988 even if they are not victorious on every claim." *Fox v. Vice,* ___ U.S. ___, 131 S.Ct. 2205, 180 L.Ed.2d 45

(2011).

To determine reasonable attorney's fees, district courts use the lodestar method by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Johnson,* 668 F.3d at 929; *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 639 (7th Cir. 2011). "There is a strong presumption that the lodestar calculation yields a reasonable attorney's fee award." *Pickett,* 664 F.3d at 639; *see also Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 130 S.Ct. 1662, 1672, 176 L.Ed.2d 494 (2010) ("loadstar method is readily administrable" and "objective"). Furthermore, "[o]nce the petitioning party provides evidence of the proposed fees' reasonableness, the burden shifts to the other party to demonstrate the award's unreasonableness." *Wachovia Sec., LLC v. Banco Panamericano, Inc.,* 674 F.3d 743, 759 (7th Cir. 2012).

District courts can adjust fee awards "upward" or "downward" based on the "results obtained" in the litigation. *See Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Sottoriva v. Claps,* 617 F.3d 971, 975 (7th Cir. 2010). "[A]lthough a district court has significant discretion in determining the lodestar, it cannot base its [adjustment] on an irrelevant consideration or reach an unreasonable conclusion." *Johnson*, 668 F.3d at 929. The Seventh Circuit's review of an attorney's fees award involves a highly deferential standard because "the district court has a more complete picture of the case as a whole; the issues tend to be factual matters for which appellate review is limited; the accuracy of the ultimate decision is not likely to be enhanced by frequent and detailed appellate review; and it would be wasteful to engage in a 'second major litigation' over attorneys' fees." *Lock Realty Corp. IX v. U.S. Health, LP,* 707 F.3d 764, 773 (7th Cir. 2013) (citing *Pickett,* 664 F.3d at 639).

ANALYSIS

I.  **Untimely**

First, Defendants argue that the Court should deny Plaintiff's petition for attorney's fees in its entirety because it is untimely under Northern District of Illinois Local Rule 54.3, which requires that fee motions shall be filed no later than 91 days after entry of judgment. Although the Court originally entered judgment on September 10, 2012, the Court entered an amended judgment on November 28, 2012. Therefore, Plaintiff's fee petition filed on January 23, 2013 is timely under Local Rule 54.3. Accordingly, Defendants' first argument is without merit.

II.  **Medical Claims**

Next, Defendants assert that the Court should exclude the hours Plaintiff's counsel expended in pursuing Plaintiff's "medical claims" because counsel had no good faith basis to pursue any such claims. Although Plaintiff originally brought claims based on his psychological symptoms and conditions, he dropped these claims well before trial and limited his damages to "garden variety" emotional damages, such as pain and suffering. After Plaintiff dropped his psychological symptoms and conditions claims in 2010, Defendants nevertheless pursued these claims during discovery arguing that all of Plaintiff's medical records and psychological history "are fair game on the issue of emotional distress causation." (R. 213-1, 7/22/10, e-mail.)

Because Defendants pursued Plaintiff's medical claims in the context of compensatory damages after Plaintiff dropped these claims from this lawsuit, Defendants' argument that the Court should deduct the hours Plaintiff's counsel expended relating to these medical claims is unavailing. *See Catalan v. RBC Mortgage Co.,* 05 CV 6920, 2009 WL 2986122, at *5 (N.D. Ill. Sept. 16, 2009) ("When parties that do not bear the burden of proof at trial mount a spirited

defense of the case, they can hardly complain when their adversaries spend at least as much time and effort to surmount the defense.").

**III. Trial Hours**

Defendants also argue that the Court should exclude the hours Plaintiff's counsel Dan Dorfman spent at trial in their entirety because Mr. Dorfman was a second chair and this matter was not complicated. Defendants rely on the Court's fee petition order in another Section 1983 lawsuit, *LaSalvia v. City of Evanston*, in which the Court concluded that the second chair in that lawsuit duplicated the first chair's efforts in the context of a case involving uncomplicated theories of liability. *See LaSalvia v. City of Evanston,* No. 10 C 3076, 2012 WL 2502703, at *2 (N.D. Ill. June 28, 2012).

Here, Mr. Dorfman conducted direct and cross-examinations of certain trial witnesses, and thus the hours spent preparing witnesses for trial are clearly recoverable. Moreover, as Mr. Dorfman's billing entries reflect, he was Plaintiff's co-counsel from the beginning of this lawsuit, unlike the second chair in *LaSalvia*. Therefore, Mr. Dorfman's presence during trial added value to the first chair's understanding of the case, including the hours spent discussing trial strategy and jury selection. Indeed, at the August 7, 2012 final pre-trial and jury instruction conference, as well as at trial, Mr. Dorfman displayed an extensive understanding of the facts and law involved in this lawsuit. Therefore, *LaSalvia* is factually distinguishable from this lawsuit. Hence, the Court denies Defendants' request to exclude Mr. Dorfman's trial hours in their entirety.

**IV. Proportionality**

Throughout their legal memorandum, Defendants' arguments suggest that the Court

should deny or reduce Plaintiff's fee request because Plaintiff only received $9,000.00 in compensatory damages. The Seventh Circuit, however, has "rejected the notion that the fees must be calculated proportionally to damages." *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (quoting *Alexander v. Gerhardt Enter., Inc.,* 40 F.3d 187, 194 (7th Cir. 1994)). As the Supreme Court teaches:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*City of Riverside v. Rivera,* 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). Nevertheless, because the "amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988," *see id.* at 574, the Court will determine reasonable attorney's fees in the context of the facts and circumstances in this lawsuit below. *See Hensley,* 461 U.S. at 434; *Sottoriva,* 617 F.3d at 975.

**V.     Lodestar Analysis**

    **A.     Hours Reasonably Expended**

Defendants object to specific entries of both Mr. Dorfman and co-counsel Blake Horwitz. Most of Defendants' objections contain little or no explanation — other than the disputed entries are unreasonable, excessive, or vague. In response, Plaintiff's counsel has provided more complete explanations to the challenged entries and has adjusted some of time billed for clerical-type work. (*See* 216, Ex. F, Revised Timesheets.) After carefully reviewing the revised timesheets, the Court accepts counsel's time adjustments and revised explanations as accurate

5

and reasonable.

B. **Reasonable Hourly Rate**

Defendants do not object to first chair Mr. Horwitz's hourly rate of $425.00. Instead, they challenge Mr. Dorfman's hourly rate of $310.00 arguing that the Court should reduce his rate to $250.00 an hour. In particular, Defendants contend that although Mr. Dorfman is a seasoned attorney, he did not start litigating Section 1983 cases until 2009 when he joined Mr. Horwitz's law firm. Indeed, prior to working with Mr. Horwitz, Mr. Dorfman, a 1998 law school graduate, practiced tort litigation and appeals in California and complex commercial litigation in both California and Illinois. From 1998 until 2009, Mr. Dorfman's practiced involved all aspects of civil litigation and his complex commercial litigation practice was primarily in federal court. (R. 207-3, Ex. C, Dorfman Aff. ¶¶ 1-14.)

The Seventh Circuit has defined a reasonable hourly rate as one that is "derived from the market rate for the services rendered." *Pickett,* 664 F.3d at 640. Under this standard, courts presume "that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Id.* "The fee applicant bears the burden of 'produc[ing] satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community." *Id*. (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Also, "[t]he reasonableness of an attorney's billing rate depends on the experience and qualifications of the professional." *Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.,* 570 F.3d 890, 905 (7th Cir. 2009). "If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth 'a good reason why a lower rate is essential.'" *Pickett,* 664 F.3d at 640 (quotation omitted); *see also*

6

*Gautreaux v. Chicago Hous. Auth.,* 491 F.3d 649, 659-60 (7th Cir. 2007) ("once an attorney provides evidence establishing his market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded.") (citation omitted).

In Mr. Dorfman's affidavit, he avers that he has served as first or second chair in five federal civil rights trials in the Northern District of Illinois. (Dorfman Aff. ¶¶ 14-16.) As lead counsel in one case, Mr. Dorfman obtained a judgment in favor of his clients on their excessive force claims against two Chicago police officers. (*Id.* ¶ 15.) Also, he avers that he has appeared in over 36 cases in the Northern District of Illinois, most of which have been police misconduct cases, although he has also worked on employment discrimination and First Amendment retaliation cases. (*Id.* ¶ 13.) Plaintiff's counsel further sets forth affidavits of individuals with similar experience, including an attorney who has focused on civil rights cases since 2007 and bills $355.00 an hour and a civil rights attorney with six years of experience who bills $300.00 an hour. (R. 214, Exs. A, B.) Equally important, courts have awarded both attorneys these rates. In addition, courts in this district have approved the range of $285.00 to $310.00 an hour for trial attorneys with similar civil rights and overall litigation experience as Mr. Dorfman. *See McDonough v. Briatta,* No. 06 C 2732, 2013 WL 1303800, at *4 (N.D. Ill. Mar. 27, 2013); *Ragland v. Ortiz,* No. 08 C 6157, 2012 WL 4060310, at *3 (N.D. Ill. Sept. 14, 2012); *Alcazar-Anselmo v. City of Chicago,* No. 07 C 5246, 2011 WL 3236024, at *8 (N.D. Ill. July 27, 2011); *Smith v. City of Chicago,* No. 09 C 4745 (N.D. Ill. Jan. 12, 2012). The Court also notes that although Mr. Dorfman has practiced civil rights law for approximately four years, during that four-year time period he has been first or second chair five times and has appeared in numerous civil rights lawsuits, including preparing those lawsuits for trial. Accordingly, Mr.

7

Dorfman has accumulated a considerable amount of civil rights litigation experience in a short amount of time. Based on the submitted affidavits, similar hourly rates awarded, Mr. Dorfman's experience, and his work on this matter, the Court reduces Mr. Dorfman's hourly rate to $290.00 an hour as appropriate under the circumstances.

Meanwhile, Defendants reliance on *Wells v. City of Chicago* is not persuasive, especially because counsel in *Wells* failed to offer sufficient support for their hourly rates, unlike counsel in this lawsuit. *See Wells v. City of Chicago,* ___ F.Supp.2d ___, 2013 WL 622942, at *3 (N.D. Ill. Feb. 20, 2013). Further, *LaSalvia* is distinguishable, as discussed above, and also because counsel failed to provide the Court with sufficient evidence of the requested rate of $350.00 for the second chair. *See id.* at 4. As counsel well know, no two cases are exactly alike. Indeed, as the Seventh Circuit recognizes in the context of fee awards, a "district judge's substantial discretion, which implies deferential appellate review of fee awards, ensures inconsistency." *Johnson v. Daley,* 339 F.3d 582, 593-94 (7th Cir. 2003) (internal citation omitted). Defendants do not offer any further substantiation for their requested rate of $250.00, and therefore, have failed in their burden of presenting evidence why this lower rate is appropriate. *See Pickett,* 664 F.3d at 640.

## VI. Downward Adjustment

Defendants maintain that the Court should adjust the lodestar amount due to the limited degree of success obtained, namely, that Plaintiff only succeeded on one claim against Defendant Officer Shields and that the other claims — failure to intervene, false arrest, malicious prosecution, and an excessive force claim against Defendant Officer Sheldon — were unsuccessful. *See Hensley*, 461 U.S. at 436 ("the most critical factor" in determining the

8

reasonableness of a fee award "is the degree of success obtained"); *Sottoriva,* 617 F.3d at 975 (same). The Court agrees. Because Plaintiff's constitutional and state law claims involved a common core of facts based on related legal theories, the Court focuses on the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *See Hensley*, 461 U.S. at 435. As the Seventh Circuit reasons, "[p]recision is impossible in such calculations, and the district court is entitled to considerable discretion in arriving at an award that it deems reasonable." *Sottoriva,* 617 F.3d at 976.

Although Plaintiff succeeded on only one of his claims and the jury awarded him $9,000.00 in compensatory damages, taking into account the purposes behind the fee-shifting statute, the Court exercises its discretion and reduces the lodestar amount by 50 percent. *See Rivera,* 477 U.S. at 575 ("[b]ecause damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."); *see, e.g., DeCola v. Keel,* No. 09 C 3799, 2010 WL 5232972, at *2 (reducing lodestar by 50 percent based on mixed result); *Garcia v. Oasis Legal Fin. Oper. Co.,* 608 F.Supp.2d 975, 980 (N.D. Ill. 2009) (reducing lodestar by 50 percent because degree of success obtained, "while not entirely insignificant, is partial at best"); *Tauber v. City of Chicago,* 35 F.Supp.2d 699, 702 (N.D. Ill. 1999) (reducing lodestar by 40 percent based on lack of success of total claims).

Applying a 50 percent reduction to the lodestar amount of $133,721.25, the Court arrives at an attorney's fee award of $66,860.63, which is reasonable under the particular circumstances of this case. *See Perdue,* 130 S.Ct. at 1676 ("Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge.") (quoting 42 U.S.C. § 1988)).

9

## CONCLUSION

For the these reasons, the Court grants Plaintiff's attorney's fees petition in the amount of $66,860.63.

**Date:** April 17, 2013

                                        **ENTERED**

                                        _____
                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**